MARY THOMAS AND OTHERS, MINORS, &c., BY THEIR NEXT FRIEND, APPELLANTS, vs. JAMES WILLIAMS AND MATILDA WILLIAMS, HIS WIFE, GUARDIANS, &c., APPELLEES.

1. A father can appoint a guardian for his children during any part of the infancy of the child, "by deed in writing or last will and testament," as prescribed by the act of 1828, (Thomp. Digest, 225,) but such appointment *only* gives "*power* over the child," and *not* over the *property* of the minor.

2. Under the statute of 12 Charles 2d, c. 26. sections 8 and 9, fathers were authorized to appoint guardians for their children, who should have power over the person of the child, and the custody and management of the estate of the minor; but our statute of 1828, is inconsistent with the statute of Charles, and restrains the custody, care and management of the guardian appointed by deed or will to the *person* of the child.

3. A person appointed guardian by deed or will of the father, may be guardian both of the person and estate of the minor, but as guardian of the *person*, he derives his appointment from the father, and of the property by authority from the Court authorized to grant it.

4. An infant may, by his *prochein ami*, call his guardian to an account.

5. A Court of Chancery will permit a stranger to come in and complain of the guardian, and abuse of the infant's estate.

6. The statute authorizing the father to appoint a guardian of his child, does not contemplate their giving a bond.

7. If a person appointed guardian, pursuant to our statute, abuses the trust, by doing anything prejudicial either to the [person of the infant or his estate, the Court of Chancery, where the Probate Court refuses or neglects so to do, may, upon proper application, either remove him and appoint another guardian, or else impose such terms on him, by obliging him to give security, &c.; as will effectually hinder him from doing any thing prejudicial to the infant.

This case was decided at Marianna.

Appeal from Calhoun Circuit Court.

The opinion of the Court contains as tatement of the facts, to which reference is made.

*McClellan & Barnes* for appellants.

*A. H. Bush* for appellees.

35

FORWARD, J., delivered the opinion of the Court.

Mary Thomas, John F. O. Thomas, Nathaniel Thomas and Margaret Thomas, minor children of John F. O. Thomas, deceased, by their next friend, Luke Lott and Ann M. Lott, his wife, bring their bill of complaint against James and Matilda Williams, setting forth, among other things, that the father of said minor children, John F. O. Thomas, in his life time, became seized and possessed of certain property, under and by virtue of the will of Jonathan Thomas, his father, who directed in said will, that the said property should be held in trust by the executors of his will, (or some other person legally appointed for that special purpose,) for the exclusive support and maintenance of his son, John F. O. Thomas and his family, for and during his natural life, and at his death to be equally divided between the lawful heirs of said John F. O. Thomas, for their own use and behoof forever.

The bill further states that, Banks Meacham, executor of the will of Jonathan Thomas, in the execution of said will *turned said* negroes, Peter and Fishey, with her increase, as named in said bequest, over to the said John F. O. Thomas in his life time.

The bill further states that the said John F. O. Thomas, the father of complainants, departed this life on the 8th February, 1859, having the said negroes in his possession at his death, leaving said complaianants and Benoni Thomas, who is of age, his lawful children.

It is further alleged in said bill that the said John F. O. Thomas, the father of said complainants and of said Benoni, before his death, executed and delivered to the said James and Matilda Williams a "paper writing," of which the following is a copy :

"STATE OF FLORIDA, 'CALHOUN COUNTY :—Know all men by these presents, that I, John F. O. Thomas, of the

county and State aforesaid, do nominate, constitute and appoint James Williams and Matilda Williams as my true friends in trust, and at my death to take my four children, Mary Margaret, John F. O., Nathaniel and Margaret Elizabeth, and to take care of them, and also to take their property in trust, and to support my children and educate them until they become of age, so as to act for themselves, and also to be appointed their guardian in any and all capacities, to support and to obtain any property that may belong to them or in any wise belonging to them, and also to be intrusted with all and singular the property, and children to raise and take care of, in the best manner that they can to raise them up, as though they were their own, and to protect them in the same manner as they would their own children. Witness my hand and seal, this the 10th day of December, A. D., 1858.

[Signed] JOHN F. O. THOMAS.

" Signed, sealed and delivered in the presence of L. B. McKinny, John C. Taylor."

The bill further alleges that under and by virtue of this paper writing, the said James and Matilda Williams claim to be the guardian of the persons and property of the complainants, and have proceeded to take charge of the same without giving any guardian bond as the law directs shall be done.

The bill further sets forth the said John F. O. Thomas, at his death, owned a small property, and that letters of administration have been granted on his estate to Benoni Thomas, the brother of complainants, and he has taken upon himself the administration of the same.

It is further stated that after the death of the father of the complainants, the Judge of Probate of Calhoun county appointed three indifferent persons to value and divide said negroes, derived under the will of the grandfather, between the said complainants and their brother, the said Benoni

Thomas, that they proceeded to do so, and did divide them; to Benoni, they allotted *three* negroes, and to the complainants they set apart in common *nine* negroes.

The bill further states, that said nine negroes thus allotted to the complainants are now in the possession and control of the said James and Matilda Williams, they claiming to hold said negroes as the guardian of your complainants under the said appointment contained in said deed in writing, and without giving any guardian bond.

The bill charges that the complainants derived their said property from their grandfather, under the provisions of his will; that the said James and Matilda Williams are not entitled to the possession, custody and control of the same, without they should make and execute a good and sufficient guardian bond for the same. The complainants further charge that it is not prudent and safe for said James and Matilda Williams to hold said negro property without giving bond for the same, *and that they apprehend loss from the same being held as at present.*

The prayer of the bill is that the Court of Equity will order, adjudge and decree that the said James and Matilda Williams shall make and execute a bond as guardian in double the amount of the value of said negro property, with good and sufficient sureties, &c., and in the meantime the Court will order that the Sheriff take them into his custody, for safekeeping, or that a receiver, until said bond is given, be appointed, and general prayer for further relief.

The answer of Williams and wife admits the will of Jonathan Thomas, as alleged, but insists that the effect of said will was to vest in the said John F. O. Thomas an absolute title to the property given and devised to him, and that he had full power and the legal right to dispose of the same as he might see fit, or if such was not the effect that the legal title thereof is in Banks Meacham, the trustee, named in the will, and that he should have been made a

party to said bill. The answer further insists that the "*paper writing*" above set forth, was the last will and testament of the said John F. O. Thomas. The answer admits that they have in their charge and under their care the said minor children, and that they are in possession of said property.

The defendants insist in their answer that under and by virtue of their office of testamentary guardian of said minors, they are entitled to such care of said children, and to the possession and management of their property. The answer avers that the mother of these children died before the father, and was the niece of said Matilda Williams, and that at her request, with the sanction of the father, had much of the trouble, care and protection of said children, who are very near and dear to the defendants.

The defendants in their answer deny that the said minors desire any change, and aver that they are satisfied with the guardianship assigned them by their father. The defendants in their answer further insist, that as there is no allegation of waste or mismanagement in the bill, nor any equity in said bill not properly cognizable in a Court of Probate, that the Court of Equity had no jurisdiction, and pray to have the same benefit thereof as if they had *demurred* to the bill. The defendants further allege in their said answer, that they have been put to expense about their guardianship, and are put to expense in this suit which they claim should be paid out of the property of complainants, if said minors are taken from them. The complainants filed replication and the cause was set down for hearing on the bill and answer. Afterwards on the 4th November, 1859, the Chancellor made the following order, viz:

This cause having been fully argued and submitted on bill and answer, and the Court being advised as to its decree to be rendered herein, it is considered, ordered, adjudged and decreed, that the prayer of the complainants be

and the same is hereby refused, and that the said bill be dismissed. From which decree an appeal is taken to this Court.

It is contended by the defendants that the writing executed by said John F. O. Thomas, appointing them guardians, is the last will and testament of said Thomas, and that they are testamentary guardians.

*Secondly,* It is insisted that said slaves became vested in the said John F. O. Thomas in his life time, and that in and by said " paper writing," he appointed the defendants testamentary guardians of the minors and made them trustees or gave them the possession, control, and management of said property as their guardians during minority. The first question to be determined is, whether the said "paper writing" is a will or deed ?

If it is a will making a bequest of *slaves* in trust, it is under our statute void so far as it makes a bequest of slaves, for not having been executed in the presence of *three* witnesses. See Thomp. Dig., page 192.

But whether an instrument be a deed or a will does not depend upon its form or manner of execution, but upon its operation. Wilborn vs. Weaver, 17 Geo. 267.

Let us see what the operation of this instrument would be at common law, and what it is under our statute. Upon a careful examination of the writing, it will be seen that it does not attempt to make any other disposition of the property of the minors than to authorize the guardians named being intrusted with it.

As to their property it says : They, Williams and wife, are " *to be appointed their guardian in any and all capacities, to support and to obtain any property that may belong to them, or in any wise belonging to them, and also to be intrusted with all and singular the property.*" They are, however, *at the death* of said Thomas, to take his four children and take care of them, and the children to raise

and take care of in the best manner they can ; to raise them up as though they were their own, and to protect them in the same manner they would their own.

It is not an appointment of guardian over the property of the children, because it points to a guardian "to be" afterwards appointed for that purpose. The operation of the instrument then is to give the defendants *power over the children* until they become of age, which would seem testamentary in the form of a deed, and is the same in office and interest with a guardian in socage, excepting where restricted by the deed, 4 Bacon's Abrid., 563, while a testamentary guardian has the custody of the lands and goods of the infant, which the guardian has not. 4 Bac. Ab. 544.

Whether we construe this as a will or a deed, it will have the same operation under our statute of 1828, which provides that "fathers may appoint guardians for their children by deed in writing, or last will and testament, during any part of the infancy of the child, and such appointment shall give the guardian the same *power over the child*, and shall subject him to the same liability as is and shall be directed by law." Thomp. Dig. 225.

This paper is in the form of a deed, although testamentary in its character, and its execution is like that usually accompanying a deed. It is true, that according to the common law rule, as laid down in Blackstone, a deed must take effect in *presenti* and not in *futuro*. Yet our statute authorizes a father to appoint a guardian for his children by "*deed*" in writing. This provision of our statute means something, and we cannot think the Legislature intended merely the authorizing of a parent to thus convey away his natural right while he was living, to take effect in *presenti*.

In giving construction to this instrument, we think it such a deed as is authorized by the statute, and the said defendants are guardians of said children, under appointment of the father "*by deed in writing*," and as such guardians have

296       SUPREME COURT.

Thomas et al. vs. Williams and Wife.—Opinion of Court.

power over the persons of the said minors during their minority, or until they are by proper authority, for good cause, removed.

This deed is the authorized act of the father in his life time, wherein he appoints guardians to take custody and management of the children after his death—a power of appointing similar to what was conferred on the father by English statutes, 4 and 5, P. and M., c. 8, 4 Bacon's Abridg ment, 542, (Title guardian A,) and by the 12 Car. 2, c. 24, § 8, ibid. 543.

Whether by this appointment, irrespective of the deed in writing, being guardians by statute, they have the right to the custody and management of the slaves and other personal estate of said children, is a question of some difficulty.

In England, by the 9th section of 12, of Charles the Second, c. 24, they have provided for it by enacting, " That such person or persons to whom the custody of such child or children hath been or shall be so disposed or devised, shall and may take into his or their custody, to the use of such child or children, the profits of all lands, tenements, and hereditaments of such child or children, and also the ·custody, tuition and management of the goods and chattels and personal estate of such child or children, till their respective age of one and twenty years, or any lesser time, according to such disposition aforesaid, and may bring such action or actions in relation thereto, as by law a guardian of common socage might do."

Have the provisions of this statute been adopted in this State, and the same powers given to the guardian appointed by the father, as he possessed under the English statute, or has our act of 1828 restricted those powers and confined them to the custody, care, management and tuition of the child ?

Our Legislature has in this State, by act, adopted the statute laws of England, which are of a general and not of

a local nature, down to the 4th day of July, 1776 ; provided the said statutes be not inconsistent with the Constitution and laws of the United States and the Legislative acts of Florida. (See Thomp. Digest, 21.)

Thus at the passage of the act of 1828, in which fathers are authorized to appoint guardians, this 9th section of. 12 Charles was in force here.

Had the Legislature authorized fathers to appoint guardians for their children by deed in writing or last will and testament, during any part of the infancy of the child, and stopped there, then there can be no doubt but that under the 9th section of the statute of Charles such guardian would have had the same power as they possessed under the English statute, but it goes on and declares, " *such appointment shall give the guardian the same powers over the child* as is and shall be directed by law." They restricted the power to that *over the child*, by not making any provisions that they should have power *over the property* of the child, thereby making the provisions of the statute of Charles inconsistent with our act. Mr. Reeves in his treaties on domestic relations, page 311, says : " It often happens that one person is guardian of the person, and another of the estate of the minor, and often the same person is guardian of them both."

Taking into consideration what the law was under the English statute in force in this State at the time of the passage of the above act of 1828, we think, from its peculiar wording, the Legislature intended that one person should be guardian of the person and another of the estate of the minor ; and if one person is guardian of both, he, in such cases as the one under consideration, derives one by appointment of the father, the other by appointment of the Court. A similar construction has been given to the statute in Georgia. Poe Admr. vs. Schley, 16 Geo. 364.

Taking this view of our statute, it becomes unnecessary for us to enquire whether the legal title of these slaves is vested in the trustee named in the will of Jonathan Thomas, or whether Benoni Thomas, the administrator of the estate of John F. O. Thomas, is entitled to possession of them. In fact, this could not be determined under this bill, because neither Banks Meacham nor Benoni Thomas are parties thereto. Nor does it appear how or upon whose application the Judge of Probate ordered a partition or allotment of the negroes. Having decided the defendants are only guardians, having power over the persons of the minors and not over their property, we are now to consider whether the Court erred in denying the prayer of the bill and dismissing it. There is no doubt that an infant may, by his *prochein ami* call his guardian to an account, and a Court of Chancery will permit a stranger to come in and complain of the guardian and abuse of the infant's estate. Fulton vs. Rosevell, 1 Paige 178, Earl of Pomfret vs. Lord Windsor, 2 Ves. 484, 2 Vernon 342, 1 P. W. 119. And it seems that if a person appointed guardian pursuant to our statute, abuses the trust by doing anything prejudicial either to the person of the infant or his estate, the Court of Chancery may either remove him and appoint another guardian, or else impose such terms on him, by obliging him to give security, &c., as will effectually hinder him from doing anything prejudicial to the infant. Beaufort vs. Berty. 1 P. W., 706, Roach vs. Garver, 1 Ves. 160, 1 John, chy. 99.

It is not alleged in the bill filed in this case that the defendants are abusing their trust or doing anything prejudicial, either to the person of the minors or their estate, nor does this appear by any evidence.

The bill charges it is not prudent and safe for them to hold said negro property without giving bond, and that they apprehend loss from the same being held as at present, but there is no evidence to show the unsafety of the property,

or that there are grounds for apprehending a loss. If any one desires there should be a guardian of the property of the minors with bond, he should apply to the Judge of Probate for letters of guardianship. The whole tenor of the prayer of the bill is, that bond should be required of the guardians. Our statute does not contemplate their giving abond, and there being no evidence to show that said defendants, as such guardians, are doing anything prejudicial either to the person of the minors or their estate, it would be beyond all precedent to require they should give bond and security. (See Eyre vs. Countess of Shaftesbury, 2 P. Wms. 107.

We therefore think the Court below did not err in dismissing the bill. The decree is affirmed with costs.